UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF FLORIDA, TALLAHASSEE DIVISION


CIVIL RIGHTS COMPLAINT
ACTION UNDER 42 U.S.C. § 1983 and 42 U.S.C. § 1985


JOHN QUINTIN SHULER,
by and on behalf of himself, and,
JOSHUA QUINTIN SHULER, a minor,
JOHN DUSTIN SHULER, a minor, and,
ALEXANDER BRYANT SHULER, a minor,

Plaintiffs,


VS.                                    CASE NO.: 4:04cv68 RH/WCS


BETTY MEREDITH,
JANN TUCKER-PETTWAY,
DAVID RUDENBORG,
TAMARIA CHANDLER,
GRENDY HENRY,
PAULA B LANE,                    JOHNNIE FLOYD,
MEREDITH SACKS,          DEPARTMENT OF CHILDREN & FAMILIES,
DONALD A. PUMPHREY, JR.,      all unknown other,
JAMES VERNON COOK,        in their individual and official capacities,
CONNIE FLOYD,                 Defendants,

## STATEMENT OF CASE

1. The instant action arises from the simulated legal process of the Department of Children & Families and its employees named herein, Guardian ad litem, and various attorneys placing Plaintiff's children into shelter care endangering said children and further simulated legal process in an attempt to Terminate the Parental Rights of Plaintiff John Quintin Shuler, causing personal humiliation and inflicting mental anguish and emotional distress upon the Plaintiffs John Quintin Shuler, Joshua Quintin Shuler, John Dustin Shuler, and Alexander Bryant Shuler, and a series of constitutional and statutory deprivations that are explained herein.

2. Defendants appeared to have awareness regarding the constitutional and statutory rights of the Plaintiff.

## JURISDICTION

3. Jurisdiction of the Court is invoked pursuant to:

42 U.S.C. § 1983, which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, priveleges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. 42 U.S.C. § 1985 (3) which gives right to a cause of action for a conspiracy which deprives a citizen of the United States of any right or privilege; the First, Fourth, Fifth, Seventh, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States. The Court is further requested to assume control of collateral state claims under the doctrine of pendent jurisdiction as the claims arising thereunder involve the same actors and sets of circumstances.

5. 28 U.S.C. § sec. 1331, the general federal question statute.

6. 28 U.S.C. sec. 1343 (1), to recover damages under 42 U.S.C. sec. 1983 and 1985.

7. The Declaratory Judgement Act, 28 U.S.C. sec. 2201, which allows the Court to declare the rights of the parties.

8. Further necessary and proper relief based on a declaratory judgement, 28 U.S.C. sec. 2202.

9. 28 U.S.C. sec. 1651, the All Writs Act.

10. The Plaintiffs' intrinsic human rights.

## PARTIES

## PLAINTIFFS

11. Plaintiff John Quintin Shuler lives at, Apalachee Correctional Institution, 52 West Unit Drive, Sneads Florida, 32460, in Jackson County.

12. Plaintiff Joshua Quintin Shuler lives at, 1936 Gloria Street, Tallahassee, Florida, 32303, Leon County, and is the minor son of John Quintin Shuler.

[3]

13. Plaintiff John Dustin Shuler lives at, 1158 Wakulla Springs Road, Crawfordville Florida, 32327, in Wakulla County, and is the son of John Quintin Shuler, and is a minor.

14. Plaintiff Alexander Bryant Shuler lives at, 1158 Wakulla Springs Road, Crawfordville Florida, 32327, in Wakulla County, and is the son of John Quintin Shuler, and is a minor.

## DEFENDANTS

15. Betty Meredith, Counselor/Authorized Agent, Florida Department of Children & Families, 3019 Jackson Bluff Road, Tallahassee Florida, 32399-2929.

16. Jann Tucker-Pettway, Guardian Ad Litem and Case Coordinator, Guardian Ad Litem Program, 301 S. MONROE Street, Leon County Courthouse, Room 203-D, Tallahassee, Florida, 32301

17. David Rudenborg, Counselor/Authorized Agent, Florida Department of Children & Families, 3019 Jackson Bluff Road, Tallahassee Florida, 32399-2929.

18. Tamaria Chandler, Counselor , Florida Department of Children & Families , 3019 Jackson Bluff Road, Tallahassee Florida , 32399-2929.

19. Grendy Henry, Family Service Supervisor, Florida Department of Children & Families, 3019 Jackson Bluff Road, Tallahassee Florida , 32399-2929.

20. Paula B. Lane , Children & Families Counselor, Florida Department of Children & Families , 3019 Jackson Bluff Road, Tallahassee Florida , 32399-2929.

21. Meredith Sacks , Children & Families Supervisor, Florida Department of Children & Families , 3019 Jackson Bluff Road, Tallahassee Florida , 32399-2929.

22. Donald A. Pumphrey , Jr. , Attorney-at-law, 203 North Gadsden Street , Suite 7, Post Office Box 1818 , Tallahassee Florida , 32302.

23. James Vernon Cook, Attorney-at-law , 314 West Jefferson Street, Post Office Box 10021 , Tallahassee Florida , 32302.

24. Connie Floyd, Relative Custodian, 1158 Wakulla Springs Road, Crawfordville Florida, 32327.

25. Johnnie Floyd, Relative Custodian, 1158 Wakulla Springs Road, Crawfordville Florida, 32327.

26. Florida Department of Children & Families, 3019 Jackson Bluff Road, Tallahassee Florida, 32399-2929

27. And in their official and individual capacities, the foregoing, and all unnamed others, upon discovery.

## PREVIOUS LAWSUITS

28.(a) Plaintiff: John Q. Shuler,
   (b) Defendant: Jeffery S. Richardson,
   (c) Case No.: 2003 cc 003992,
   (d) Name of Judge: Honorable Judith W. Hawkins,
   (e) County and Judicial Circuit: Leon County, Second Judicial Circuit;
   (f) Approximate filing date: April 2003
   (g) Status of Case : still pending
   (h) Facts: Legal malpractice. Attorney Jeffery S. Richardson failed to act with reasonable diligence

and promptness in representing a Mr. John Q. Shuler. Mr. Richardson failed to keep Mr. Shuler reasonably informed of the status of his dissolution and failed to explain the matter to the extent necessary to permit Mr. Shuler to make informed decisions regarding the representations of Mr. Shuler's dissolution of marriage.

## DEPENDENCY CASE

29. (a) In the interest of: ALEXANDER SHULER, Minor Child.

(b) Termination of Parental Rights proceeding, terminating the Father, John Quintin Shuler's parental rights.

(c) Case No.: DP 01-133

(d) Name of Judge: Unknown (has been no less than six (6) judges presiding over various proceedings.

(e) County and Judicial Circuit: Leon County, Second Judicial Circuit.

(f) Approximate filing date: September 8, 2003

(g) Status of Case: Still pending

(h) Facts: Facts are contained herein under

the sections titled "FACTS" and "Cause of Action".

30. Plaintiff's have never had any action in federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service.

## FACTS

31. April Janeen Alday (hereafter known as "April Shuler") and John Quintin Shuler (hereafter known as "John Q. Shuler") were married on February 23, 1985, in Quincy, Florida, Gadsden County.

32. April Shuler gave birth to Joshua Quintin Shuler (hereafter known as "Joshua Shuler") on January 24, 1987, in Quincy Florida at Gadsden County Hospital.

33. The following year, April Shuler gave birth to John Dustin Shuler (hereafter known as "Dusty Shuler") on July 26, 1988 in Quincy Florida at Gadsden County Hospital.

34. April Shuler gave birth to her last child,

Alexander Bryant Shuler (hereafter known as "Alex Shuler") on December 7, 1997 in Tallahassee Florida at Tallahassee Memorial Hospital, Leon County.

35. John Quintin Shuler is both the biological and legal father of Joshua Shuler; Dusty Shuler; and, Alex Shuler.

36. On or about January 17, 1998, April Shuler carried Alex to Sandridge Bar, became intoxicated, leaving Alex Shuler without making arrangements for his care, wrecking the car and was arrested for DUI.

37. Joshua Shuler, Dusty Shuler and Alex Shuler was adjudicated dependant on or about January 22, 1998, due to the mother's (April Shuler) alcohol problem and John Q. Shuler's failure to protect the children from their mother.

38. John Q. Shuler was represented at all the proceedings by Mr. John Eagen, Esq..

39. John Q. Shuler and April Shuler did not reside together until after the January 17, 1997 incident.

40. John Q. Shuler moved out of the home on April 6, 1999 to 3919 Booth Road, Tallahassee, Florida, 32303.

41. On May 5, 1999, Judge William L. Gary, Gadsden County, Second Judicial Circuit returned legal care and custody of Joshua, Dusty and Alex Shuler to the parents, John Q. Shuler and April Shuler.

42. However, on May 10, 1999, the Department of Children & Families received a new report due to April Shuler's inadequate supervision of Alex Shuler.

43. Again, John Q. Shuler was represented at all times by Mr. John Eagen, Esq.

44. During this time, April Shuler filed for a dissolution of marriage in Gadsden County, the Second Judicial Circuit.

45. John Q. Shuler was represented at all times by Jeffery S. Richardson, Esq., in the dissolution of marriage proceedings.

46. John Q. Shuler moved to H2 Box 8265, Lot 6, Tallahassee, Florida, 32310, Leon County, in July 1999.

[10]

47. In July 1999, April Shuler and Joshua, Dusty and Alex Shuler, moved in with John Q. Shuler.

48. On September 20, 1999, April Shuler was arrested for domestic battery on John Q. Shuler, at their residence

49. There had been no contact between John Q. Shuler and his attorney Mr. John Eagen, nor the courts or the Department of Children & Families after this incident.

50. In January 2000, John Q. Shuler began employment in St. Mark, Florida, Wakulla County as a welder for the Union, however, due to a defective transformer, the job was delayed for three (3) months.

51. John Q. Shuler at that time, end of February 2000, moved back to Leon County on Joe Thomas Road in the Fort Braden area, acquiring a mobile home from a deputy sheriff that works at the Leon County Courthouse.

52. April Shuler and the children, Joshua, Dusty and Alex Shuler had been with John Q Shuler and lived in the homes John Q. Shuler had provided, from July 1999 thru March 19, 2000.

53. On March 19, 2000, John Q. Shuler and April Shuler engaged in an altercation with each other over Alexander Shuler.

54. April Shuler had snatched Alex Shuler from John Q. Shuler's arms and tossed Alex on the couch, then Alex runs from the couch crying, into the kitchen and into the bathroom.

55. April Shuler then ran after Alex, and upon going thru the kitchen, she picked up a blunt object and entered the bathroom, closing the door.

56. John Q. Shuler then knocked on the door and tried to "talk" April Shuler out of the bathroom with Alex.

57. April Shuler resisted John Q. Shuler's attempts to "talk" her out of the bathroom, stating she "was going to kill Alex and herself", and, "if you come in to interfere, I would kill you also."

58. John Q. Shuler was in fear of Alex's safety and when Alex start screaming and saying "go away mommy, go away"; John Q. Shuler entered.

59. John Q. Shuler broke the bathroom door down and struggled with his wife, April Shuler, until he was sure that Alex was safely away from the mother, April Shuler.

60. John Q. Shuler attempted to calm the situation even farther by questioning April Shuler in a consulting manner in "why she would want to harm herself and their son, Alex Shuler".

61. As the sheriff's office responded to this altercation and arrived, John Q. Shuler and April Shuler were both calm and were both looking for something to drink in the refrigerator.

62. John Q. Shuler was arrested for the altercation, spent about fourteen (14) months in the Leon County Jail, before being convicted and sent to prison for aggravated battery with ten (10) year prison sentence.

63. The Department of Children & Families visited John Q. Shuler at Leon County Jail, a few days after the arrest and when John Q. Shuler asked if he was entitled to have an attorney present, the

Department Agent declined to conduct the interview any further and left.

64. That, (no.63), was the last time John Q. Shuler had any contact regarding his children, Joshua, Dusty and Alex Shuler, with any Department of Children & Families employees, attorneys or the Court, until Elboney Lesane responded to his letters on October 24, 2002.

65. The attorney of record for John Q. Shuler was John Eagen, Esq. until sometime in December 2000 or January 2001.

66. The dissolution of marriage that April Shuler had initiated in April 1999, had began having proceedings again in Gadsden County by Judge P. Kevin Davey, in the Second Judicial Circuit and the attorney of record for John Q. Shuler was Jeffery S. Richardson, Esq..

67. Neither attorney of record, John Eagen nor Jeffery S. Richardson, contacted John Q. Shuler by letter, phone, notice, subpeona or in person while John Q. Shuler was detained at Leon County Jail from March 19, 2000 thru May 3, 2001.

[14]



68. John Q. Shuler learned of being divorced at a Plea hearing on April 6, 2001, thru his criminal attorney, Gregory Cummings, Esq.

69. The Honorable Judge Ferris, Leon County, Second Judicial Circuit, order Greg Cummings to forward the dissolution files to John Q. Shuler on April 6, 2001.

70. The "Stipulated Final Judgement of Dissolution of Marriage", ordered by Judge Davey on March 13, 2001, gave John Q. Shuler supervised visitation rights with the minor children, Joshua, Dusty and Alex Shuler, "only after his release from incarceration".

71. John Q. Shuler was then sent to the Florida Department of Corrections, Apalachee Correctional Institution, Sneads Florida in Jackson County were he has been until present.

72. John Q. Shuler was also ordered by Judge Ferris on April 6, 2001, "that he was not to have any contact with April Shuler at all, and he was not to have a third party contact April Shuler."

73. The stipulation placed on John Q. Shuler's

[15]

sentence prevented him from writing letters or making phone calls or sending anyone to see his children, for the fact that contact would have to be made with April Shuler in order to contact the children.

74. John Q. Shuler's two (2) sisters, the maternal aunts of Joshua, Dusty and Alex Shuler, attempted numerous times to contact the said child and give them Christmas and birthday gifts, but was consistently denied by April Shuler to have contact.

75. John Q. Shuler had attempted to rectify the deficient representation of Jeffery S. Richardson in his dissolution by first sending a motion to reverse judgement, and after no response from the Second Judicial Circuit Court, then filed for a belated appeal with the First District Court of Appeals, on or about March 2001.

76. John Q. Shuler also initiated a Bar Complaint on the reprenentation of Jeffery S. Richardson in May 2001.

77. In November 2001, April Shuler attempted to commit suicide in front of the minor children, Joshua, Dusty and Alex Shuler.

[16]

78. On December 11, 2001, an ex-parte order transferring jurisdiction the supervision by the Department of Children & Families from Gadsden County to the Second Judicial Circuit in and for Leon County, due to April Shuler's attempted suicide, and ruled on by the Honorable George S. Reynolds III

79. On July 18, 2002, an "Affidavit and Petition for Placement in Shelter" by David Rudenborg, Counselor and Authorized Agent for the Department of Children & Families was submitted and heard by the Second Judicial Circuit, Leon County.

80. The Honorable Judge Crusoe ruled on the Petition for Placement in Shelter, placing the minor child, Alexander Shuler, with his maternal aunt, Connie Floyd, on July 18, 2002.

81. On July 19, 2002, April Shuler suffered a brain aneurysm and massive stroke being hospitalized for this reason and being in a state of comatose.

82. The minor children, Joshua and Dusty Shuler were then placed for emergency sheltering by David Rudenborg, Counselor and Authorized Agent for the Department of Children & Families, on July 19, 2002.

83. On July 20, 2002 the Honorable P. Kevin Davey ruled on the Petition for Placement in Shelter, placing Joshua Shuler with his maternal cousin, Richard & Beverly Melton, and apparently placing John "Dusty" Shuler with maternal cousin, Mary & Shane Strickland.

84. John Q. Shuler was not notified of any type of hearings from the November 2001 incident were the Department of Children & Families initiated voluntary protective services on the children Joshua, Dusty and Alex Shuler, until January 31, 2003.

85. On July 30, 2002, a shelter review hearing was held and the Honorable Kathleen F. Dekker ordered the appointment of counsel, Donald A. Pumphrey, Jr., Esq., for the father, John Q. Shuler.

86. John Q. Shuler was notified on July 30, 2002, by his sister, Sherri Bodie, of April Shuler's present condition and that his children were now with various relatives of April Shuler.

87. John Q. Shuler's sister, Sherri Bodie and her daughters were allowed by Connie Floyd to come to Dusty Shuler's birthday party and give, Joshua, Dusty and Alex

Shuler, their presents from the two previous years.

88. On or about September or October 2002, John Q. Shuler, wrote to the Department of Children and Families with various questions about the minor Children, Joshua, Dusty and Alex Shuler, and "if" and who was his attorney if he has one appointed to him.

89. John Q. Shuler receives a response from the Department of Children & Families thru the Counselor, Elbaney Lesane, who addressed John Q. Shuler's letter and informed him that Donald A. Pumphery, Jr., was his attorney of record, on October 24, 2002.

90. In November 2002, John Q. Shuler acquired the address to Donald A. Pumphrey, Jr.'s law office and mailed a letter to him in an attempt to establish contact.

91. On December 25, 2002, John Q. Shuler's sister, Sherri Bodie, visited him and told him of April Shuler's decease and that services had already been held with herself and John Q. Shuler's other sister, Melinda Story attending with their own children.

92. On January 31, 2003, John Q. Shuler receives Notice of hearing, set for February 4, 2003 and a Judicial Review on May 6, 2003, sent from the Department of Children & Families.

93. On or about February 6, 2003, John Q. Shuler again tries establish contact with his attorney Donald A. Pumphrey, Jr., by sending a very detailed letter and noting violations of the Florida Bar Rules of Professional Conduct.

94. On or about February 20, 2003, John Q. Shuler receives an incomplete record of the dependency case of his minor children, Joshua, Dusty, and Alex Shuler, but has finally received the first record that has the Judicial Reviews, Shelter Petitions, Case Plans, etc..

95. Donald A. Pumphrey, Jr., comes to Apalachee Correctional Institution and reviews John Q. Shuler's objections to the next Judicial Review, and the placements that John Q. Shuler has adamantly objected to since July 30, 2002, when he found out about such placements.

96. On March 12, 2003, Donald A. Pumphrey submitted

[20]

Obejections on behalf of John Q. Shuler, to the Second Judicial Circuit, in Leon County.

97. John Q. Shuler had no contact with his appointed counsel Donald A. Pumphrey, Jr., from July 30, 2002, thru on or about February 20, 2003, when Donald A. Pumphrey, Jr., sent a partial record, despite John Q. Shuler's attempts.

98. On review of the record that Donald A. Pumphrey, Jr., sent to John Q. Shuler, he found that numerous hearings were held without John Q. Shuler being notified of the hearings or the right to counsel such as:

(a) Judicial Reviews from November 2001 until the Shelter hearing on July 18, 2000,

(b) Case plans from November 2001 until the Shelter hearing on July 18, 2002,

(c) The Shelter hearing on July 18, 2002 by David Rudenborg,

(d) The Shelter hearing on July 19, 2002 by David Rudenborg,

(e) The Shelter Review on July 30, 2002, David Rudenborg,

(f) Arraignment of Parents on August 27, 2002

(g) Case plan for September 19, 2002 by Paula B.

Lane and Meredith Sacks.

(h) Case plan for October 31, 2002 thats unsigned by anyone.

(i) Judicial Review / Case plan on January 7, 2003 by Elboney Lesane and Brendy Henry.

(j) all proceedings between May 7, 2003 until August 5, 2003.

99. On April 17, 2003, John Q. Shuler was transported from Apalachee Correctional Institution Sneads, Florida, to the Leon County Jail in Tallahassee Florida, for an evidentiary hearing on his motion to set aside sentence and judgement in his criminal case.

100. John Q. Shuler receives a letter dated May 3, 2003 with a consent for Donald A. Pumphrey withdraw from John Q. Shuler's case with the Department of Children & Families, which he signs and sends back to Donald A. Pumphery, Jr..

101. John Q. Shuler is transported from Leon County Jail, Tallahassee Florida to Apalachee Correctional Institution in Sneads, Florida on June 6, 2003.

102. On or about August 3, 2003, John Q. Shuler

was notified by his sister Melinda Story, that his two oldest sons were removed from the custody of Richard & Beverly Melton, due to their abandonment and abuse of both said children.

103. On August 6, 2003, John Q. Shuler mails a letter to the Department of Children & Families, to Elboney Lesane requesting if he had an attorney of record, if his minor children had been removed from the Melton's custody, if so, why, and where were they currently located, also, when was the next Judicial Review.

104. After John Q. Shuler had not received an answer from Elboney Lesane, attorney James Vernon Cook, Esq., (hereinafter known as James V. Cook) contacted John Q. Shuler by phone at Apalachee Correctional Institution to go over a judicial review for his objections.

105. This Judicial Review had apparently taken place on August 5, 2003, Second Judicial Circuit in Leon County.

106. James V. Cook mailed a copy of the judicial review, the Guardian ad litems report to the court, and a copy of John Q. Shulers objections to John Q. Shuler, who received the material on August 29, 2003.

[23]

107. Upon review of the material, John Q. Shuler received on August 29, 2003, he found gross mistakes and blatant false allegations.

108. John Q. Shuler then prepared a letter that out lined the mistakes and allegations in the Guardian ad litems report and mailed the letter and exhibits from the Clerk of the Court, Department of Highway Safety & Motor Vehicles, Arrest Reports & Documents that refute the allegation, to his attorney of record, James V. Cook and the Department of Children & Families on September 2, 2003.

109. At the January 7, 2003 Judicial Review, it was made known that Connie & Johnnie Floyd wanted to Adopt Alex Shuler and at the August 5, 2003 Judicial Review, the Department of Children and families changed the goal for Alex Shuler to Termination of Parental Rights and Adoption.

110. John Q. Shuler was never told about the Shelter hearing or given any documents for the Shelter hearing that he assumes took place on June 25, 2003, from the Judicial Review on August 5, 2003, nor does he know who filed the Petition for Shelter, by the Department

of Children & Families for the Shelter Placements of his minor children, Joshua Shuler and Dusty Shuler on June 25, 2003.

III. Connie and Johnnie Floyd have made it known that they do not want Alex Shuler to be raised being taught Judaism which his father, John Q. Shuler practices and believes adamantly in.

112. On November 5, 2003, after waiting two months for a reply from his previous letter with exhibits, John Q. Shuler again sends a letter to James V. Cook to establish some sort of communication.

113. John Q. Shuler receives a letter from James V. Cook, dated December 5, 2003, that pretty much tells John Q. Shuler that he is too busy for his case and that the Department of Children & Families does not have to notify or provide, John Q. Shuler, with a copy of the Judicial review before the hearing, but to just James V. Cook as his attorney.

114. On December 14, 2003, John Q. Shuler mails a letter to James V. Cook again reiterating that he wants a copy of the Judicial Review Report before the hearing date in order to make his objections on the hearing date, during

[25]

the hearing and that John Q. Shuler wants to appear telephonically at the Judicial Review hearing due to him receiving a 30 day deadline on his initial appeal brief and Leon County Jail will not allow him reasonable access to the Courts thru the law library.

115. John Q. Shuler receives a motion dated for December 21, 2003 from James V. Cook for him to withdraw from the case and also, states that I wish not to be transported to the Judicial Review.

116. John Q. Shuler prepares a Motion for Telephonic Hearing and mails it on December 2 , 2003 with a copy of the order from the First District Court of Appeals to show he does in fact have a deadline for his initial brief.

117. On January 5, 2004 , John Q. Shuler is transported anyway, to Leon County Jail for the Judicial Review hearing on January 6, 2004 , however the hearing was postponed til January 27, 2004.

118. John Q. Shuler was denied access to the Courts by the Leon County Jail for the entire period he had to prepare his initial brief before the deadline.

119. On January 27, 2004, John Q. Shuler was carried to the "unit" within the Leon County Jail and placed on the phone for the Judicial Review hearing.

120. Upon asking the Judge, whom he was never told the name, why he was at Leon County Jail on the phone for this hearing, the Judge replied that "she didn't have him transported and doesn't know why John Q. Shuler is at Leon County Jail".

121. John Q Shuler was transported from Leon County Jail to Apalachee Correctional Institution on January 28, 2004.

122. On February 5, 2004, John Q. Shuler was served with a summons with an attached "Petition For Termination of Parental Rights", that was both insufficient and incomplete, by the summons stating nothing about the termination of parental rights or losing your rights permently to the child and the Petition itself refers to an exhibit, but the copy he was served with didn't have any exhibit.

123. Upon reading the Petition for Termination of Parental Rights, it became apparent to John Q. Shuler that the Department of Children & Families, thru their Authorized Agent, Counselor Betty Meredith continued to use the false information from Guardian ad litem, Jann

Tucker-Pettway knowingly and willfully, despite the documents John Q. Shuler had provided to them in his attempt to clarify the record.

124. The attempts of John Q. Shuler's sisters, Melinda Story and Sherri Bodie to keep contact with the minor children have been denied by Connie and Johnnie Floyd since the revealing of their attempt to adopt Alex Shuler before January 7, 2003 and their teaching Alex Shuler to call them "mommy" and "daddy".

125. John Q. Shuler has made known this alienation of his son, Alex, to the Department of Children & Families, it's employees, Donald A. Pumphrey, Jr. and James V. Cook without any results and sees in the Guardian ad litem's report to the court, dated August 5, 2003, where this is not only condoned, but encouraged by the Guardian ad litem Jann Tucker-Pettway.

126. John Q. Shuler has been traumatized by the treatment that he has been exposed to by the neglect of the Department of Children & Families, their employees and his own attorneys, by their purposely excluding him from proceedings at critical stages and the conspiring to alienate his minor children, Joshua

[28]

Dusty and Alex Shuler, from him causing severe depression, mental anguish and emotional distress in which he now has to take medication for, with no promise that the symptoms will be relieved or will persist permanently even with treatment.

## LEGAL CLAIMS

127. The law concerning the deprivation of any Constitutional right, privilege or fundamental liberty interest with the family is well known. There are a number of other issues that need to be adjudicated here as well.

128. The facts related above disclose a concerted and systematic effort by the defendants and their agents under color of law to deprive plaintiffs of constitutionally secured rights, including, but not limited to, those enumerated in the succeeding paragraphs.

# FIRST CAUSE OF ACTION

DEFENDANTS, THE DEPARTMENT OF CHILDREN &
FAMILIES, IT'S EMPLOYEE'S AND ATTORNEYS JAMES V.
COOK AND DONALD A. PUMPHREY, JR. DEPRIVED JOHN Q.
SHULER HIS CONSTITUTIONAL PROTECTED RIGHT TO DUE
PROCESS OF LAW AND THE EQUAL PROTECTION OF THE
LAWS AS AFFORDED BY THE U.S. CONSTITUTION AND THE
FLORIDA CONSTITUTION.

129. The defendant's named above denied John Q.
Shuler his Constitutional rights to due process of the law
and the equal protection of the laws that are protected
and guaranteed not once, but twice: once by the
Federal Constitution Amendment 5 and Amendment 14; and
once by the Florida Constitution Article 1 §9, by their
excluding John Q. Shuler from essential proceedings,
denying him notification of proceedings and failing to
inform John Q. Shuler of his right to counsel for these
proceeding and at each subsequent hearing or proceedings
as stated in the following statutes, under the color of
law:

    (a) F.S. 39.402(5)(a), Notice & right to counsel
    (b) F.S. 39.402(5)(b)1, given an opportunity to be heard
        and present evidence at shelter hearing,

(c) F.S. 39.402(5)(b)2, be given the right to be represented by counsel,

(d) F.S. 39.402(8)(i) 6 & 7, by defendant's stating to court that John Q. Shuler has been notified of time date & location and importance of proceeding and the participation and his right to counsel.

(e) F.S. 39.801(3)(a), by serving an insufficient summons and Petition for Termination of Parental Rights on February 5, 2004.

130. Due process of law is not an overly difficult concept. It means: An orderly proceeding wherein a person is served with notice and an opportunity to be heard and to enforce and protect his rights before a court. If any question of fact or liability be conclusively presumed against him, this is not due process of law. See eg. Black's Law Dictionary 6th ed. p.500.

131. Also, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections ..... The notice must be of such nature as reasonably to convey the required

information. See e.g. Blacks Law Dictionary 7th ed. p. 517.

132. The essential elements of due process are:
    (a) Notice
    (b) An opportunity to be heard
    (c) And to defend
    (d) In an orderly proceeding adapted to the
        nature of the case.

133. 42 USC. § 1983 was intended to enforce the provisions of the fourteenth (14th) Amendment "against state action ... whether that action be executive, legislative, or judicial". Mitchum v. Foster, 92 S.Ct. 2151.

134. Plaintiffs realize that the Court probably does not need either a history lesson or a lecture in due process of law. However, it appears that the Defendants need all the help they can get.

135. Defendants: Tamaria Chandler, Counselor; Grendy Henry, Supervisor; Paula B. Lane, Counselor; Meredith Sacks, Supervisor; and, the Department of Children & Families filed Judicial Review Reports and Case Plans without notice to the Plaintiffs or participation by Plaintiffs in the preparations of the case plans, nor written and face to face advisement as

to the failure to complete a case plan may result in the termination of parental rights under statutes:

    (a) F.S. 39.701(6)(b), .... written report and the written report of the Guardian ad litem must be served on all parties ...., at least 72 hrs before the judicial review hearing....

    (b) F.S. 39.602(4)(a), At least 72 hrs prior to the hearing in which the Court will consider approval of the case plan, all parties must be provided with a copy of the plan developed by the department

    (c) F.S. 39.602(4)(b), Before the filing of the plan, the department shall advise each parent, both orally and in writing, that failure of the parents to substantially comply with a plan may result in the termination of parental rights....

    (d) F.S. 39.602(2), In a case in which physical, emotional, or mental condition or physical location of the parent is the basis for the parents non-participation, it is the burden of the department to provide substantial evidence to the Court that such condition or location has rendered the parent unable or unwilling to participate in the preparation of a case plan, either pro se or through counsel. The supporting documentation must be submitted to the Court at

the time the plan is filed.

136. Defendants: Tamaria Chandler, Grendy Henry, Paula B. Lane, Meredith Sacks, and the Department of Children & Families failed to properly give John Q. Shuler, notice, advice John Q. Shuler of his right to counsel, allow John Q. Shuler to participate in the preparations of case plans, or give written and oral advisement and notice that failure to comply with case plans may result in the termination of Parental Rights, from March 2000 until the present.

137. Defendant, David Rudenborg, Family Service Counselor, and the Department of Children & Families filed "Affidavit and Petition For Placement In Shelter" on July 18, 2002 on the minor child Alex Shuler and also on July 19, 2002 on the minor children Joshua Shuler and John "Dusty" Shuler. The Defendants neglected to notify John Q. Shuler by notice, either written or orally, advise John Q. Shuler of his right to counsel, allow John Q. Shuler to be present personally, even telephonically to present evidence or objections and provide to the Court on the record the names, address and relatives of all parents, and next of kin of the children, in violation of Florida Statutes:

(a) F.S. 39.402(5)(b)1, The parents or legal custodians shall be given written notice that:

[34]

1. They will be given an opportunity to be heard and present evidence at the shelter hearing;

(b) F.S. 39. 402(5)(b)2, They have the right to be represented by counsel, and if indigent, the parents have the right to be appointed counsel, at the Shelter hearing and at each subsequent hearing or proceeding .... If the parents or legal custodians appear for the shelter hearing without legal counsel, then, at their request, the shelter hearing may be continued up to 72 hours to enable the parents or legal custodians to consult legal counsel

(c) F.S. 39.402(5)(a), The parents or legal custodians of the child must be given such notice as best ensures their actual Knowledge of the date, time and location of shelter hearing. The persons providing or attempting to provide. notice to the parents or legal custodians, must if the parents or legal custodians are not present at the hearing, advise the Court either in person or by sworn affidavit, of the attempts made to provide notice and the result of those attempts.

(d) F.S. 39. 402 (8) (b), The parents or legal custodians of the child shall be given such notice as best ensures their actual Knowledge

[35]

of the time and place of the shelter hearing.

138. The July 18, 2002 Shelter hearing was not a hearing held on an emergency basis. The minor child was already with his maternal aunt, Connie Floyd, and had been with her for weeks prior to the hearing, living in her home, and custody of Alex Shuler was given to Connie Floyd at this hearing.

139. Defendendants David Rudenborg and the Department of Children & Families notified the Mother, April Shuler, who was present for the July 18, 2002 shelter hearing, and she was appointed counsel at the hearing. However, despite knowing exactly where the Father, John Q. Shuler, was at the time, intentionally precluded John Q. Shuler of his rights by denying him notice.

140. Defendants David Rudenborg and the Department of Children & Families, again failed to notify John Q. Shuler of the July 19, 2002 Shelter hearing that involved his minor children Joshua Shuler and John "Dusty" Shuler and violated the same rights as in the July 18, 2002 shelter hearing.

141. Defendant; the Department of Child & Families

held two more shelter hearing, removing Joshua Shuler once and John "Dusty" twice, and placing those minor children with other relative/nonrelative caretakers. Due to the Department of Children & Families not providing John Q. Shuler with documents such as, Judicial Review Reports, Petition for Placement in Shelter, etc., let alone notify him of such hearings, John Q. Shuler can only use the dates that the Department has placed these hearings on the few documents he has in his possession. The two shelter hearings were held on: March 6, 2003, where Dusty was removed from Mary & Shane Strickland and placed with Richard & Beverly Melton; and, June 25, 2003, where Dusty and Joshua Shuler were removed from Richard & Beverly Melton and Dusty Shuler was placed with maternal aunt Connie Floyd and Joshua Shuler was placed with nonrelatives, Robert and Barbara Plant.

142. Again, the Department of Children & Families and its employees denied John Q. Shuler of any notification. Upon discovery, John Q. Shuler would ask for leave of court to add the Authorized Agents names from the shelter hearings to the list of Defendants.

143. Accordingly, failure to notify the parent John Q. Shuler of all the referred to shelter hearings has the

same effect as the sheltering of his minor children illegally. Under Florida Statute:

   (a) F.S. 39. 402 (8)(b), .... The failure to provide notice to a party or participant does not invalidate an order placing a child in a shelter "if" the Court finds that the petitioner has made a good faith effort to provide such notice. (emphasis added)

¶44. Defendants named above clearly have denied John Q. Shuler his Constitutional rights to due process of the law and the equal protection of the laws, and futhermore, has denied his minor children the equal protection of the laws.

## SECOND CAUSE OF ACTION

THE DEFENDANTS JAMES VERNON COOK AND DONALD A. PUMPHREY, JR. DEPRIVED JOHN Q. SHULER HIS CONSTITUTIONAL PROTECTED RIGHT TO DUE PROCESS OF LAW AND THE EQUAL PROTECTION OF THE LAWS AS AFFORDED BY THE U.S. CONSTITUTION AND THE FLORIDA CONSTITUTION.

[38]

145. Defendant Donald A. Plumphrey, Jr., as attorney of record for John Q. Shuler, denied John Q. Shuler by failing to communicate in a manner reasonably necessary to permit John Q. Shuler to make informed decisions regarding the representation. Defendant failed to keep John Q. Shuler reasonably informed of the status of the dependency case and failed to explain the matter to the extent reasonably necessary to permit John Q. Shuler to make informed decisions. Defendant failed to give proper notice of Judicial Reviews and/or ensure that proper notice was given to John Q. Shuler by the Department of Children & Families and its employees or thru himself as John Q. Shuler's attorney of record.

146. Defendant Donald A. Plumphrey, Jr. was appointed as counsel for John Q. Shuler on July 30, 2002, by the Honorable Kathleen F. Dekker in the Second Judicial Circuit, Leon County, after and for the reason of two independent shelter hearings that were held on July 18, 2002 and July 19, 2002, placing John Q. Shuler's three (3) minor children in relative care.

147. John Q. Shuler had to write a letter to the Department of Children & Families in October 2002 to try and find out who was his attorney of record or if he even

had an attorney at that time.

148. Upon receiving a letter from Elbaney Lesane, Counselor from the Department of Children & Families stating the name, phone number, and address of Donald A. Pumphrey, Jr., John Q. Shuler mailed a letter to contact Mr. Pumphrey in order to have his objections entered to the Court from the shelter hearings, and this letter was mailed on or about October 29, 2002.

149. Upon waiting until January 20, 2003, John Q. Shuler again tried to contact Donald A. Pumphrey, Jr. thru the mail. This time Mr. Pumphrey responded by sending John Q. Shuler a partial record of the instant case and followed up by visiting John Q. Shuler for a face to face discussion of Judicial Review that had already taken place, for John Q. Shuler's objections to the review. This visit took place on February 28, 2003.

150. John Q. Shuler had been trying to object to the placement of Joshua Shuler, John Q. Shuler's oldest son, with Richard & Beverly Melton, due to John Q. Shuler's knowledge of the Meltons.

151. Another Shelter hearing was held on March 6, 2003 in which Donald A Pumphrey, Jr. failed to give notice or ensure John Q. Shuler was properly notified, and John "Dusty" Shuler was then placed with Richard & Beverly Melton.

152. John Q. Shuler received a letter from Donald A. Pumphrey, Jr on March 21, 2003 with a motion enclosed for my consent for him to withdraw. However, the letter stated nothing about a shelter hearing or if he had any objections to the shelter hearing and it's results.

153. On June 17, 2003, John Q. Shuler's two sons, Joshua Q. Shuler and John "Dusty" Shuler had been left and abandoned by Richard Melton and an abuse report had been filed. Richard & Beverly never went to pick Joshua and Dusty Shuler back up. This happened 4 months after John Q. Shuler had sent, a very detailed letter of Richard & Beverly Melton's habits.

154. Defendant James Vernon Cook denied John Q. Shuler due process of law and equal protection of the laws by his failure to notify or ensure the notification of Judicial Reviews and ensure John

Q. Shuler received a copy of that review as required by Florida Statute and sworn to by the Department of Children & Families.

155. John Q. Shuler wrote to the Department of Children & Families after he learned his children had been abandoned by Richard & Beverly Melton and instead of a return letter, John Q. Shuler was contacted by James V. Cook, but not about the shelter hearing and if he had objections to the hearing, but rather a Judicial hearing that had already taken place on August 5, 2003.

156. John Q. Shuler received the objections, a copy of the Guardian ad litem report and a copy of the Judicial Review hearing report on August 29, 2003 and upon his reading of the Judicial Review Report, it states that the dissemination of this report is given to all parties at least 48 hours prior to the judicial review. It also has boxes that separated, John Q. Shuler from his attorney. Not only did he fail to notify John Q. Shuler of the hearing, he also failed to ensure that John Q. Shuler had his copy at least 48 hours prior .... note that by statute it is actually 72 hours prior to the hearing:

(a) F.S. 39.701(6)(b), A copy of the

social service agency written report and the written report of the Guardian ad litem must be served on all parties whose where-abouts are known; to the foster parents or legal custodians; and to the Citizen Review Panel, at least 72 hours before the Judicial Review hearing or Citizen Review Panel hearing....

157. Defendant James V. Cook failed to review the written report of the Guardian ad litem with John Q. Shuler that was submitted to the Court on August 5, 2003 and contained grossly exaggerated allegations and false information, that John Q. Shuler didn't even know existed until he received it in the mail on August 29, 2003.

158. John Q. Shuler attempted to have the record clarified by sending James V. Cook and the Department of Children & Families a very detailed ten (10) page letter with exhibits showing the mistakes and false allegations by the documents from, the Department of Corrections, the Department of Highway Safety & Motor Vehicles, Clerk of the Second Judicial Court offices, Court records, and James V. Cook failed to enter any objections on the Guardian ad litem's report and the Department used the information later.

## THIRD CAUSE OF ACTION

DEFENDANTS: DAVID RUDENBORG, TAMARIA CHANDLER, GRENDY HENRY, PAULA B. LANE, MEREDITH SACKS, JANN TUCKER-PETTWAY, GAVE TESTIMONY ORALLY AND/OR WRITTEN, UNDER OATH ABOUT MATERIAL MATTERS, THE TESTIMOMY WAS FALSE AND THE DEFENDANT KNEW THE TESTIMONY TO BE FALSE AND GAVE THE FALSE TESTIMONY WILLFULLY AND INTENTIONALLY IN AN OFFICIAL PROCEEDING, DENYING PLAINTIFFS OF THEIR RIGHTS TO DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAWS.

159. Defendant David Rudenborg did, on or about, July 18, 2002 and July 19, 2002 commit perjury in an official proceeding by giving oral and/or written testimony under oath that he knew was false, about material matters and David Rudenborg gave this false testimony knowingly, willfully and intentionally to deny Plaintiffs their Constitutional rights and excluding John Q. Shuler from those proceedings or the right to have counsel represent John Q. Shuler and put John Q. Shuler's minor children in harm and endangering the children who were later abused and abandoned by the placements, in violation of:

[44]

(a) Florida Statute 39.402(5)(a)

(b) Florida Statute 39.402(8)(i)6

(c) Florida Statute 39.402(8)(i)7

(d) Florida Statute 837.02(1)

(e) Florida Statute 895.02(1)(a)33

(f) 18 USC§1621

(G) 18 U.S.C.§1961 (1)(B) section 1503

160. Defendants: Tamaria Chandler, Grendy Henry, Paula B. Lane, Meredith Sacks did, on or about, July 30, 2003 ; August 5, 2003 ; December 30, 2002 ; and, September 19, 2002, commit perjury by giving oral and/or written testimony, under oath, about material matter that the defendants knew were false and gave this false testimony willfully, knowingly and intentionally to deny the Plaintiffs of their Constitutional rights in violation of:

(a) Florida Statute 39.602(2)

(b) Florida Statute 39.602(4)(b)

(c) Florida Statute 39.603(1)(e) ; 895.02(1)(a)33

(d) Florida Statute 39.603(3) ; 837.02(1)

(e) 18 U.S.C. § 1621

(f) 18 U.S.C. § 1961 (1)(B) section 1503

161. Defendant Jann Tucker-Pettway, did, on or

[45]

about, August 5, 2003 commit perjury by giving oral and /or written testimony under oath, that she knew was false about material matters and gave this false testimony knowingly, willful and intentionally under color of law in an official proceeding to deny Plaintiffs of their Constitutional rights in violation of:

(a) Florida Statute 39.701(6)(6)

(b) Florida Statute 837.02(1)

(c) Florida Statute 843.0855(3)

(d) Florida Statute 843.0855(4) & 895.02(1)(a)33

(e) 18 U.S.C. § 1621

(f) 18 U.S.C. § 1961 (1)(B) Section 1503

## FOURTH CAUSE OF ACTION

DEFENDANT BETTY MEREDITH CORRUPTLY SIMULATED LEGAL PROCESS BY SUBMITTING LEGAL DOCUMENTS WILLFULLY AND KNOWING SUCH DOCUMENT(S) ARE BASED FRAUDULENTLY, IN ORDER TO INFLUENCE AN OFFICER OF THE COURT AND ENDEAVORS TO OBSTRUCT, IMPEDE OR INFLUENCE, THE DUE ADMINISTRATION OF JUSTICE BY SAID SIMULATED LEGAL PROCESS, UNDER COLOR OF LAW, VIOLATING PLAINTIFFS CONSTITUTIONAL RIGHTS.

[46]

162. Defendant Betty Meredith, Counselor and an Authorized Agent, did corruptly simulate legal process on September 8, 2003 in the Second Judicial Circuit, in and for, Leon County, by submitting a "PETITION FOR TERMINATION OF PARENTAL RIGHTS", willfully and Knowing that said petition was based fraudulently, in order to influence officer of court, and endeavors to obstruct, impede or influence, the due administration of justice, by said simulated legal process under color of law.

163. On August 5, 2003, documents were submitted to the Court, Leon County, by the Guardian ad litem, Jann Tucker-Pettway that contained both false and grossly exaggerated allegations, in which John Q. Shuler was unaware of, due to the department, Tamaria Chandler, and Grendy Henry or the Guardian ad litem, Jann Tucker-Pettway failure to notify the Plaintiff John Q. Shuler and failed to serve John Q. Shuler the reports 72 hours before the hearing as statute requires, in which John Q. Shuler received the reports on August 29, 2003 and immediately attempted to rectify the record, by mail on September 2, 2003.

164. John Q. Shuler prepared a detailed summary and included exhibits from the Department of Corrections, the

Department of Highway Safety & Motor Vehicles, Leon County Sheriff's Office and Clerk of Circuit Court, Leon County, then mailed a copy of the summary with exhibits to the Department of Children & Families to show the errors and false allegations.

165. John Q. Shuler also sent the same summary and exhibits to the Defendant James V. Cook who made no effort to correct the record.

166. On September 8, 2003, Defendant Betty Meredith simulated legal process with a petition that contained the same and similar false allegations, knowingly and willfully, despite the records that the department had received from John Q. Shuler that clearly refute said allegations, and Betty Meredith simulated legal process to endeavor to influence, obstruct or impede an officer of the Court in the discharge of his duties.

167. The Termination of Parenta Rights proceedings that have been initiated against John Q. Shuler by the Department of Children & Families and Betty Meredith is premature due to the illegal sheltering of the minor children, Joshual Shuler, John "Dusty" Shuler and Alex Shuler, and, to continue with said proceedings is a violation of the Plantiffs 5th and 14th Amendment rights of the U.S. Constitution and

a continual deprivation of those same rights as guaranteed by the Constitution and violations of:

    (a) Florida Statute 843.0855(3)

    (b) Florida Statute 843.0855(4)

    (c) Florida Statute 895.02(1)(a) 35

    (d) 18 U.S.C. § 1503

## FIFTH CAUSE OF ACTION

DEFENDANTS CONNIE FLOYD, JOHNNIE FLOYD, JANN TUCKER-PETTWAY, THE DEPARTMENT OF CHILDREN & FAMILIES AND IT'S EMPLOYEES CONSPIRED FOR THE PURPOSE OF DEPRIVING THE PLAINTIFFS OF EQUAL PROTECTION OF THE LAWS, COMMITTING ACTS TO THE FURTHERANCE OF THE CONSPIRACY AND CAUSED INJURY AND DEPRIVED THE PLAINTIFFS OF RIGHTS AND/OR PRIVILEGES GRANTED TO UNITED STATES CITIZENS BY BOTH THE FLORIDA STATE CONSTITUTION AND UNITED STATES CONSTITUTION.

168. The Defendants Connie Floyd, Johnnie Floyd, Jann Tucker-Pettway, the Department of Children & Families and it's employees did conspire together to alienate the minor children Joshua Shuler, John "Dustin" Shuler, and

Alex Shuler, from their father, John Q. Shuler, in order to bring into effect proceedings that would make the adoption of Alex Shuler possible and thereby for gain for both Connie & Johnnie Floyd and the Department of Children & Families.

169. Defendants Connie Floyd and Johnnie Floyd knew that John Q. Shuler is listed as a Jewish inmate in the Department of Corrections and intentionally kept his son, Alex Shuler, from having any contact with John Q. Shuler, so that John Q. Shuler could not teach Alex Shuler the fundamental basis of Judaism.

170. Defendants Connie Floyd and Johnnie Floyd, along with the Department of Children & Families and it's employees and the Guardian ad litem brought into effect a plan for having the Parental Rights of John Q. Shuler, terminated and then institute adoption proceedings for Connie & Johnnie Floyd who could not bare children naturally.

171. The Department of Children & Families knew full well about such conspiracy, as did the Guardian ad litem Jann Tucker-Pettway who placed in her report to the Court on August 5, 2003 that Alex Shuler calls Connie and Johnnie Floyd, "mommy" and "daddy".

172. In fact, the Floyd's had been teaching Alex Shuler to call them "mommy" and "daddy" as early as December 2002 and this was not only condoned by the Guardian ad litem, but encouraged.

173. The Department of Children & Families and it's employees ignored John Q. Shuler's objections, "when" he finally found out about such situations, and even furthered the conspiracy by excluding John Q. Shuler from hearings or other proceedings from March 19, 2000 to January 6, 2004, by most significantly, notifications where shelter hearing were held placing John Q. Shuler's minor children with maternal relatives and excluding John Q. Shuler and paternal aunts from notice of such hearings or the right to counsel at the hearing or even a 72 hour delay in the hearing to consult counsel.

174. The Department of Children & Families does receive funds for adoptions, millions, in fact, and Defendants conspired to shape the events that led up to adoption proceeding, with multiple acts in furtherance of that goal in violation of:
　　　　　(a) Florida Statute 777.04 (3)
　　　　　(b) Florida State Constitution, Article 1 § 2
　　　　　(C) Florida State Constitution, Article 1 § 9

(d) 42 U.S.C. § 1985 (2)

(e) 42 U.S.C. § 1985 (3)

(f) 18 U.S.C. § 241

(g) 18 U.S.C. § 242

(h) United States Constitution, Amendment 5

(i) United States Constitution, Amendeent 14

## SIXTH CAUSE OF ACTION

**DEFENDANTS DAVID RUDENBORG, THE DEPARTMENT OF CHILDREN & FAMILIES AND IT'S EMPLOYEE'S RECKLESS ENDANGERMENT OF JOSHUA SHULER AND JOHN "DUSTY" SHULER, DENIED PLAINTIFFS THEIR RIGHTS OF DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAWS, UNDER COLOR OF LAW.**

175. The Defendants, David Rudenborg, the Department of Children & Families and it's employees held multiple shelter hearings, in which the Plaintiff John Q. Shuler was denied, notice, right to counsel and the right to defend or object and the Plaintiffs Joshua Shuler and John "Dusty" Shuler were placed without John Q. Shuler's knowledge, with Richard and Beverly Melton who were themselves unfit to care and meet the needs

of John Q. Shuler's minor children.

176. Upon discovering where his son, Joshua Shuler, had been placed, John Q. Shuler made attempts to object strongly and severely to this placement by the Department and it's employees.

177. From the first two placements on July 18, 2002 and July 19, 2002, the shelter petitions list John Q. Shuler and his address and state he was not notified.

178. On July 30, 2002, John Q. Shuler was appointed counsel, Donald A. Pumphrey, Jr., but was unable to contact Mr. Pumphrey until February 2003. However, John Q. Shuler had made his objections well known to both the Department of Children & Families and Donald A. Pumphrey, Jr. through numerous letters.

179. On March 6, 2003, another shelter hearing was held excluding John Q. Shuler and even his knowledge of such hearing. John Q. Shuler, again, did not receive notice. At this hearing, John "Dusty" Shuler was placed with the Meltons also.

180. On March 12, 2003, Donald A. Pumphrey submitted

to the Court, Second Judicial Circuit, Leon County, John Q.
Shuler's objections to a Judicial Review that was held
in February 2003, that John Q. Shuler still hasn't
received his copy of. It stated objection to the Melton placement.

181. John Q. Shuler objected to Joshua Shuler's
placement with the Melton's, however didn't know of
John "Dusty" Shuler's placement with the Melton's at that
time. Donald A. Pumphery, Jr. failed to notify John Q.
Shuler, as did the Department of Children & Families of
the March 6, 2003 shelter hearing.

182. On May 3, 2003, Donald A. Pumphrey, Jr. asked
John Q. Shuler to allow him to withdraw from the case, but
still failed to mention John "Dusty" Shuler's new placement
with the Meltons. This was handled through the mail.

183. On June 17, 2003 John Q. Shuler's minor children
Joshua Shuler and John "Dusty" Shuler were abused and
abandoned by Richard and Beverly Melton and another
shelter hearing was held on June 25, 2003 in which the
Department of Children & Families failed to notify of the
abuse to his minor children or the actual hearing for
placement, or his right to counsel.

184. Defendants David Rudenberg, Counselor, the Department of Children & Families and it's employees denied Plaintiff John Q. Shuler of his rights to due process of law, equal protection of the laws and his fundamental liberty interest to the care, custody and management of his minor children, Joshua Shuler and John "Dusty" Shuler.

185. Defendants David Rudenberg, counselor, the Department of Children & Families and it's employees denied the Plaintiffs Joshua Shuler and John "Dusty" Shuler their rights to due process of the law and equal protection of the laws, afforded to them by the United States Constitution.

## SEVENTH CAUSE OF ACTION

## ALL DEFENDANTS CAUSED INTENTIONAL INFLICTION OF MENTAL ANGUISH AND EMOTIONAL DISTRESS TO THE PLAINTIFFS BY THEIR WILLFUL AND KNOWINGLY DENIAL OF CONSTITUTIONAL RIGHTS.

184. Defendants Connie Floyd and Johanie Floyd, the Department of Children & Families and it's employees, James V. Cook and Donald A. Pumphrey, Jr. Knowingly and willful inflicted intentional mental anguish and emotional distress

upon the Plaintiffs through their alienation of the minor children from their only living parent, exclusion of John Q. Shuler from almost all proceedings, conspiring to take John Q. Shuler's youngest son Alex Shuler and adopt him out by means of simulated legal process, putting John "Dusty" Shuler and Joshua Shuler in a dangerous enviroment where they were abused, denying companionship of the minor children with their father, John Q. Shuler, who is the only parent alive, res ipsa loquitor.

185. John Q. Shuler is now being treated by a medical staff for psychological and psychiatric problems he now suffer as a result of years of incidents being brought upon him, such as listed above, by the Defendants. It is not known at this time if the medication he has to take, will reduce or "cure" symptoms or if the symptoms will persist permanently.

## EIGHTH CAUSE OF ACTION

## BY THE ACTIONS AND/OR OMISSIONS OF THE DEFENDANTS, THE NEGLIGENT INFLICTION OF MENTAL ANGUISH AND EMOTIONAL DISTRESS

WAS WILLFULLY, KNOWINGLY AND INTENTIONALLY INFLICTED ON PLAINTIFFS IN NEGLIGENT REGARD OF THEIR CONSTITUTIONAL RIGHTS.

186. Again, res ipsa loquitor.

## NINTH CAUSE OF ACTION

PLAINTIFFS SUFFERED LOSS OF CONSORTIUM BY THE DEFENDANTS ACTIONS AND/OR OMISSIONS, UNDER COLOR OF LAW, DENYING PLAINTIFFS' THEIR RIGHTS GUARANTEED UNDER THE FIFTH AMENDMENT AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

187. The Defendants: Connie Floyd, Johnnie Floyd, Jann Tucker-Pettway, the Department of Children & Families and it's employees have by multiple proceedings denied John Q. Shuler from entering "on the record" all of the relatives to his minor children and placed the children with the deceased parent's relatives, despite his objections and his information as to the available placements with the minor children's paternal aunts, uncles, grandparent and cousins, that are fit to care and provide said minor

children with family-like homes.

188. Defendants continued with placements for years despite John Q. Shuler's objection that his minor children were being alienated from him and his youngest son, Alex Shuler, had been taught continually to call Connie Floyd and Johnnie Floyd, "mommy" and "daddy", long before the Department of Children & Families moved the goal for Alex Shuler, from long-term relative care, to termination of parental rights / adoption.

189. This has severely interfered with the Plaintiffs right to interact with one another in a parent-child relationship and is being executed for the sole purpose to sever the parent-child relationship for the gain of the Defendants.

## TENTH CAUSE OF ACTION

THE DEFENDANTS, CONNIE FLOYD, JOHNNIE FLOYD, THE DEPARTENT OF CHILDREN & FAMILIES AND IT'S EMPLOYEES, INTERFERED WITH FIRST AMENDMENT FREEDOM OF RELIGION RIGHTS OF THE PLAINTIFFS.

[58]

190. The Defendants, Connie Floyd, Johnnie Floyd, the Department of Children & Families, and it's employees intentionally keep John Q. Shuler away from his minor Children, Joshua Shuler, John "Dusty" Shuler and Alex Shuler, denying all the Plaintiffs from practicing and learning the religious doctrines together as a family unit and/or in a parent-child relationship.

191. The Defendants knew that John Q. Shuler is listed as a Jewish inmate and observes all Jewish holidays, feasts and sabbaths. Defendants, further knew of John Q. Shuler's Constitutionally protected right to the care, management, and companionship of his minor children and his efforts to teach his children his beliefs.

## ELEVENTH CAUSE OF ACTION

## DEFENDANTS, WILLFULLY INTERFERED WITH PLAINTIFFS FAMILY RELATIONSHIPS.

192. All named Defendants in Plaintiffs cause of actions have willfully and intentionally interfered with the family relationships Plaintiffs had, and has successfully, all but

destroyed said relationships beyond repair. Defendants violated the Plaintiffs First Amendment right to association as guaranteed by the United States Constitution.

## CONCLUSION

193. The actions and/or omissions by the Defendants are clear and show intentional severance between a parent and his children, without regard to either the parent or his children's Constitutional Rights. The Deprivations are so numerous, the violations beyond counting, that the Plaintiff, John Q. Shuler, is cognizant of only one other governmental agency in one other nation in this century that was permitted to abduct children in such a fashion. The Gestapo, in Nazi, Germany.

## RELIEF REQUESTED

1. Trial by jury on all issues triable by jury.

2. Compensatory damages for the mental anguish and emotional distress suffered by each Plaintiff;

[60]

3. Compensatory damages in the amount of $1000.00 per day for every day that Plaintiffs Alexander Bryant Shuler, Joshua Quintin Shuler, and John Dustin Shuler, were in the custody and control of the Defendants, for each Plaintiff, from each Defendant, for each cause of action;

4. Punitive damages in the amount of $1,000,000.00 for each Plaintiff and/or to be determined by a jury.

5. Plaintiffs' cost of the suit;

6. Leave to amend the complaint, pursuant Fed. R. Civ. P. 15(a), once discovery is completed, and Defendants have raised the usual Fed. R. Civ. P. 12(b)(6) objections and avalanche of procedural gimmicks;

7. An order from the Court explaining wherein the complaint is deficient and how to correct it;

8. A declaratory judgement that the practices of the Defendants violated the substantive and procedural due process, constitutionally protected and statutory rights of the Plaintiffs;

9. A declaratory judgement that the perjury complained herein could be counted as one predicate act under R.I.C.O. (Racketeer Influenced Corrupt Organizations), 18 U.S.C. section 1961, et. seq.;

10. A declaratory judgement that the actions of the Defendants described in the Fourth Cause of Action, Obstruction of Justice, would constitute predicate acts under R.I.C.O., 18 U.S.C. section 1503, if shown to be part of a pattern or pose a continued threat of activity.

11. A preliminary injunction to hold State Termination of Parenta Right proceedings in abeyance pending review, due to irrepairable harm and continual constitutional deprivations;

12. A preliminary injunction for the immediate removal of John Dustin Shuler and Alexander Bryant Shuler and their placement into proper relative placement due to the actions in the Fifth Cause of Action and the Sixth Cause of Action.

13. A declaratory judgement that the actions of the Defendants described in the Fifth Cause of Action, Obstruction of Justice, Conspiracy, would constitute

predicate acts Under R.I.C.O., 18 U.S.C. 1503, if shown to be part of a pattern or pose a continued threat of activity.

14. Such other relief as this court deems just, proper and equitable.

Submitted on this, _____ day of March, in the year 2004.

John Q. Shuler 891150
John Q. Shuler 891150
Apalachee Correctional Institution
52 West Unit Drive
Sneads, Florida
                    32460

[63]

## U N N O T A R I Z E D   O A T H

UNDER THE PENALTIES OF PERJURY, I DECLARE THAT ON THIS 9th DAY OF March , IN THE YEAR 2004 , I HAVE READ THE FOREGOING Civil Rights Complaint, Action Under 42 USC § 1983 and 42 U.S.C. § 1985 AND THE FACTS STATED IN IT ARE TRUE AND COMPLETE.

/s/ John Q. Shuler
Name
Printed: John Quintin Shuler
DC# 891150 Location: B2-150S
Apalachee Correctional Institution
52 West Unit Drive
Sneads, FL 32460

[64]